11-0-2-9-6. Can I please the court? Before you start, let me ask you this question. Did the trial court follow our mandate in the earlier appeal as to sentencing? Let me, for the record, if you don't mind, Justice, could you state your name for the record? And then go right to Justice Gordon. My name is Jessica Pammon on behalf of the Office of the State Appellate Defender, and I represent the appellant, Mr. Nathaniel Stephens. And I'd like to argue that issue first, and then I'd like to move on to the fitness issue. Do you want to reserve any time for rebuttal? Yes, please. Five minutes. Five? Yes, please. Your Honors, the trial court did not follow this appellate court's mandate when it resentenced Mr. Nathaniel Stephens in the absence of a hearing, in the absence of the party's presence, without notice, without the right to counsel, without the ability to present mitigation evidence, without any of the rights that he was entitled to by the resentencing statute, under the Illinois Constitution, under the United States Constitution, and in contravention of this court's order. Your Honor, Mr. Stephens' sentence was effectively doubled outside of his presence with no notice or anything. A sentence that does not conform to a statutory requirement is void, or a sentence that the court has no statutory authority to enter is void. Here, the trial court's sentencing order violates the resentencing statute, Section 5-5 3D, which states that in any case when a sentence originally imposed is vacated, the case shall be remanded to the trial court and the trial court shall hold a hearing under Section 5-4-1, which may include evidence of the defendant's life, moral character, and occupation during the time since the original sentence was passed. And this statute incorporates the sentencing statute, 5-4-1 of the code, which says that the defendant also has the right to make a statement on his behalf, the right to a PSI, the right to offer evidence in mitigation, the right to confront witnesses, Your Honor. The defendant also has a Sixth Amendment right to counsel. Your Honor, the defendant also had a right to an appeal. All of these rights were violated when the trial court treated this case as a mere witness correction, as if he were correcting the fines and fees order and doubled Mr. Nathaniel Stevens' sentence from 25 years to 50 years. Your Honor, the trial court's sentencing order violates not only the Constitution and the statute, as I stated, but it also violates this court's clear mandate. This court said in its order that the judge was to use its discretion in fashioning Mr. Stevens' new sentence. The court here used no discretion. It treated it objectively as if it were a witness correction, and he stated on the record that he was correcting the mitimus. So the judge did not use any discretion at all. And the case law is clear that in an instance like this ---- Sotomayor, don't spend all your time on this one issue. Very well. If the court has no further questions on this issue ---- No. I will move on to the fitness issue. Your Honor, this court should remand its cause for second stage post-conviction proceedings because Mr. Stevens stated the gist of a meritorious constitutional claim that the trial court erred in failing to determine whether he was fit for trial and that trial counsel was ineffective for failing to request a fitness evaluation. You know, on your ineffective assistance of counsel argument, I don't think either side covered in the briefs, were you entitled to counsel to begin with? Entitled to counsel at Mr. Stevens' trial? No, appellate counsel. Yes. Mr. Stevens was entitled to appellate counsel. Mr. Stevens' appellate counsel did not raise this issue in the direct appeal brief, if that's what you're getting at. And so Mr. Stevens argues that both trial counsel and appellate counsel were ineffective for failing to raise this issue. Okay. And how did he have a right to counsel? The Sixth Amendment guarantees him the right to counsel at trial. Okay. Your Honors, both the trial court and counsel were confronted with substantial evidence that raised a legitimate doubt as to Mr. Stevens' fitness. Yet neither party took any steps to ensure that Mr. Stevens was fit for trial. Mr. Stevens alleges in his petition, and this must be taken as true. Counsel, the issue was not fitness before the court. Isn't that correct? I thought the issue was, I mean, when they were, the issue was the suppression of his confession, his videotaped confession, and that was where you got all of the evidence from the three experts. So how do you go from that, you know, to the failure to, ineffectiveness of counsel, for failure to have a fitness hearing either corresponded by the judge or by failure of counsel, you know, to demand same? You are right. Mr. Stevens' fitness was not raised at trial, and that is exactly our argument, that the experts, even though they were evaluating Mr. Stevens for Miranda waiver purposes, that their testimony revealed sufficient facts that gave rise to a legitimate doubt of his fitness. Your Honors. Counsel, when was the trial? The trial was in 2005. And when was the, when were the examinations by the experts? He was examined a couple years earlier, I believe in 2002 and 2003. That's somewhat removed if you're talking, trying to utilize that data for fitness purposes, isn't it? I mean, one person, I think the case law says, a person could be not fit for trial in 2007 and 2008. You know, they could very well be fit for trial. How much more so with a three-year gap between the examination of the defendant and the time of trial? Your Honor, there is no evidence on the record that Mr. Stevens' mental abilities, that they changed or improved during the time between the evaluations and trial. There's evidence to the contrary. In Mr. Stevens' post-conviction petition, he states that he wasn't even competent to draft his own petition. He had to get someone else to do it. And so the petition was drafted even years after the trial. And, Your Honor, the evidence on the record in regards to the experts' opinions regarding his Miranda waiver, bear directly to his fitness. Because the fitness inquiry determines whether or not the defendant can understand the nature of the legal proceedings and he's able to assist defense counsel in his defense, Your Honor. And Mr. Stevens alleges that in his petition that he was not able to assist in his defense. And if he had been competent, he might have testified. He said he might have testified at the motion hearing or at trial. But, Your Honor, it is at least arguable that the same deficiencies that the experts found to render Mr. Stevens' Miranda waiver unknowing, Your Honor, may have impacted his ability to understand the nature of the legal proceedings and to work with his attorney. The experts found that Mr. Stevens' impairments were substantial. His IQ was a 64, which is the lowest 10% of the population. He didn't fully understand what a public defender was. He was mildly mentally retarded, could only read at a kindergarten level, had difficulty communicating, did not understand what a right was, didn't know the significance of having a lawyer. And the list goes on and on and on and on from these three experts, two of which were obtained by the state. And they all come back. Let me ask you this. Did the defendant ever exhibit anything to his lawyer that would have illustrated that he was unfit? He did not understand his Miranda rights. No, and that's in part because he did not testify at anything. And he says that he didn't because he was uncompetent. No, it's got nothing to do with testifying. It has to do with what did he do that would give a reasonable attorney some focus that he needs a fitness. What did he do? He just was somebody who had difficulty understanding things he didn't like. That's what it looks like to me. Well, Your Honor, there is nothing that I can point to in the record that shows any irrational behavior. But again, I'd argue that part of that is because he doesn't say anything on the record, Your Honor. Well, counsel certainly communicated with his counsel. And counsel never brought it to the court's attention that there was any disorienting behavior or anything that would indicate that he was unable to assist counsel in proceeding with his trial. There's nothing on the record that reflects that. Is that correct? Again, that's only one factor that the court is to consider in determining whether there was a bona fide doubt. His irrational behavior, okay, the record is silent as to that. So that factor neither rebuts nor supports his claim. But another factor that should be considered is the prior medical opinion as to Mr. Stevens' competency. And here we don't have just one prior medical opinion. We have three. And they all say that he was substantially impaired. He had problems communicating. He had problems processing information. Problems understanding things about what the role of the lawyer is. These are things that go to you. But wasn't the value of that expert testimony undermined by the court? Didn't the court look at that testimony and basically eviscerate it in terms of its value? Your Honor, the court did not look at this testimony in terms of a fitness inquiry, Your Honor. The court rejected the conclusions. You are right. The court rejected the legal conclusions of these experts. So they rejected it for Miranda purposes, but yet you want to utilize it for fitness purposes. How do you get to that, counsel? Because the court never rejected the medical findings of these doctors. The court rejected their legal conclusions because of the methods that the expert used. Because one expert did not view the videotape. And another expert reviewed the prior report of another expert. So the court rejected the expert's legal conclusion based on the methods. The court never rejected that his ID was not 64. Well, it's not necessarily the method. It's the basis. For an expert's opinion, you have to have an adequate basis, always. And their basis is only what this man said to them. And after he was in prison and he talked to all the prison lawyers, see, all this comes into play here. So tell us how his inability to understand the Miranda rights somehow moves into the area that he was unfit to stand trial. And this needs to be your last answer, because you're going into your rebuttal time. I'm sorry. Your Honors, what we'd argue is that aside from the legal conclusion, whether or not he was able to waive Miranda, these experts, their testimony reveals specific facts that would go to someone's ability to understand legal proceedings and the ability to be able to assist the defendant. If he's not sure what the role of a lawyer is, that's a problem here. And we'd argue that aside from the legal conclusions of the experts and their pretrial testimony, the medical facts that these three experts ascertain, not all of them, I'm sorry, but a lot of them pertain to fitness in the sense that this should have raised the bona fide doubt of fitness. Your Honors, if this court has no further questions, Mr. Stevens requests that this court will reverse and remand this clause for second stage proceedings and vacate a sentence and remand for a new sentencing hearing. Thank you, Counsel. May it please the Court. Counsel, my name is Claire Wesselick Connelly. I'm an Assistant State's Attorney, and I represent the people of the State of Illinois. Let me ask you the same question I asked her as to our mandate as to sentencing. Did the trial court follow it? We don't get to answer that question because the defendant didn't include this issue in his post-conviction petition. Unfortunately, Your Honors do not share the same supervisory authority that the Illinois Supreme Court does and can't reach issues that were not raised in the post-conviction petition. He raised this issue for the first time on direct appeal. As a result of that, pursuant to the Illinois Post-Conviction Hearing Act, he has forfeited review of this issue on appeal in this case. He attempts to suggest that this issue was void as opposed to voidable. He has not established there is a lack of jurisdiction in this case. He has not established that the trial court's order in this case was void. The initial sentencing order in this case, directing it back for remandment, because he got concurrent time as opposed to consecutive time, consisted of a void order. This is merely a voidable order. He has not shown that there is any reason for this Court to review this issue at this time. And we ask that you find that the defendant has forfeited review of this issue. As far as the acceptance of a writing that does not conform to the definition of an affidavit, the defendant's failure to notarize the or verify the petition in this case disregards the plain and unambiguous language of the Post-Conviction Hearing Act. Well, you know, as to the notarization, I've been an author of a case, and there's been many cases that have said that at the first stage, the notarization is not important. If the Supreme Court hasn't taken that case, as far as I'm concerned, that's the law. I understand that in Parker most recently you disagreed with our position on this case. I know that there's also a case before the Illinois Supreme Court, People v. Jose Cruz, in which it's a second stage review in which the Supreme Court will be deciding the issue of the notarization requirement of this case. We respectfully disagree with your position in Parker and the position in Henderson. And we ask that this Court, otherwise, if in our position, you would be ignoring a long line of Supreme Court cases, holding that the failure to provide valid affidavits does not meet the act's minimum pleading requirements and justifies its summary dismissal. This Court, therefore, should uphold the summary dismissal of the petitioner's post-conviction petition where he failed to verify his petition by notarized affidavit. Even if this Court were not to find that summary dismissal is merited because the defendant failed to verify his petition by notarized affidavit, the merits of the issues that the defendant raised in his petition do not merit second stage review. As far as the failure to hold a fitness hearing in this case, the defendant acknowledges he can't point to any irrational behavior on the part of the defendant, any trial demeanor by the defendant, or any prior medical opinions on the testimony of three experts. Those experts... See, where is the difference between the fact, I mean, Shanklin and this case? I mean, in Shanklin, the individual had a low mental capacity. They weren't able to fully comprehend what was being verbally communicated to them. They were likely, quote, unquote, to avoid academic situations that would shame or embarrass him. Similarly, in this case, this defendant seemed to give just affirmative answers because he was trying to please. He was clearly unclear about who was the prosecutor, who was the defendant. He had an IQ of 64. He had a reading level of, what, kindergarten and a math level of third grade. I mean, this seems to be unforced with Shanklin. And there, the appellate court allowed for an ineffectiveness of counsel to request a fitness hearing. Why should the facts that have been brought out by the testimony of the experts not be applicable to this particular defendant? In Shanklin, what you had was the defendant pled guilty and you had a sentencing hearing in this case. As part of the sentencing hearing, there was a hospital report attached to that. In that hospital report, there was reports that he had been hospitalized three times for mental health conditions. And that he had a history of mental health treatment. In Shanklin, the Fourth District looked at that and said, we have no unrebutted testimony or any evidence that rebuts the evidence that's here. In our case, what you have is you have rebutted testimony. You have the testimony of these experts, but when the experts testified, they didn't testify about his fitness. They testified about his ability to understand Miranda, a separate consideration in this case. But the things that they utilized in showing that he did not understand Miranda were the same types of evidence that was used in Shanklin in terms of capacity and ability to communicate and understand. Right. But again, in Shanklin, there was nothing to rebut that testimony. You had to accept it for the truth. In this case, you have something that rebuts their claims. You have something that rebuts these experts' testimony, which is the judge's decision in this case, in which he found that these experts, that their testimony was, quote, unquote, significantly defective. You also have this court's decision when it reviewed the motion at the trial level. And when they reviewed it, they found, or I should say you found, that the conclusions were meritless. They didn't believe, this court didn't believe the experts' conclusions when they reviewed it on direct appeal. That's what he's relying on. The judge, step by step, went through and the three experts went through and decided, this is why we shouldn't believe this expert. This is why we shouldn't believe the conclusions. The defendant claims that they didn't do that. You know, counsel, I found that curious, what the judge said. I mean, we see in the court all the time that one expert or doctor relies on the evaluation on the report of another. That's allowed. Why would it not have been allowed in this particular case? I think what happened was that the trial court in this case found that the experts that did the subsequent evaluation relied too heavily on what the experts' findings were, the first expert who evaluated him. And in the instance of the third expert who evaluated, Dr. Guzman admitted she didn't even review the videotape statement that he made. The experts admitted that they didn't know that he had been arrested eight or nine times for prior criminal offenses, that he'd been advised of his Miranda rights on these other cases. There were a lot of things that these experts didn't take into consideration, and that's what the trial court emphasized in its finding in this case. Didn't the trial court conclude that they had an improper basis? In other words, this man is claiming, and they're listening to him, that he doesn't understand anything about who's who or who the lawyers were representing, yet he had been in the criminal justice system eight times and had been through this process eight times, and they didn't know that. And so the basis, therefore, is something that the judge did not believe. Isn't that what it's all about? That's correct. I think they didn't agree with the basis. Well, except the distinction was made between the fact that he had some familiarity with drug charges, but here he was up on a murder charge. And there was nothing in his past that had allowed him the type of criminal court experience that would apprise him of what was attendant to a murder charge versus various and sundry drug charges. But I don't think the Miranda rights change based on what the offense is. Miranda is Miranda. You get the same Miranda rights whether or not you're arrested for murder or whether or not you're arrested for a drug offense. It doesn't change. And I think the important thing that I'd like to point out is that fitness in this case, a bona fide doubt of fitness, clearly what he's trying to do is he's trying to equate a bona fide doubt of fitness with limited mental capacity. He's saying, I had an IQ, someone tested me and I had an IQ of 64. And the Illinois Supreme Court in People v. Moore cited in my brief, and it says, the mere fact that a defendant has limited mental capacity alone does not raise a bona fide doubt of fitness for trial. He's merely relying on a limited mental capacity to find that the trial court should correspond to your request of this, that his defense counsel should have requested that appellate counsel should have included this on direct appeal. The counsel, if a gentleman does not know, you know, just because a state's attorney comes in, his name is Nate, which is the same name as the defendant. And he thinks that that particular lawyer is his defense counsel as opposed to the prosecution. And then goes ahead and gives an inculpatory testimony. Then certainly doesn't that indicate some kind of lack of or diminished capacity to understand what is going on? Well, he can have limited mental capacity. That doesn't mean that there's a bona fide doubt of his fitness to stand trial. You can have someone who has limited mental capacity, but that doesn't necessarily equate to a bona fide doubt of his fitness. Fitness has to do with the ability to understand the nature of the proceedings and you have to be able to assist in your defense. He hasn't shown anything else to show that he had, that there was a bona fide doubt of his fitness. And that's where he fails in this case. As far as the defendant's claim of ineffective assistance of appellate counsel for failure to preserve all the issues that he raised on direct appeal in his subsequent PLA so that he could possibly raise them in a federal habeas corpus petition, this contention must fail where the petitioner's argument is based on conjecture and speculation as to how the federal court in this case would rule on this claim. In order to accept the defendant's argument, this court would have to find that it constitutes ineffective assistance of appellate counsel for failing to anticipate that one day the defendant might perhaps decide to file a federal claim. Defendant in this case has not also presented a claim involving a decision that is contrary to federal law as determined by the United States Supreme Court and that's necessary in order to file a federal petition. Therefore, at this time, people respectfully request that the trial court's decision to summarily dismiss the defendant's petition be affirmed. Thank you. Just one question. You say that they waive the issue of the sentencing, but that waiver doesn't apply to this court, does it? I mean, we have the inherent ability to make sure that the trial court follows our mandates, don't we? No, because he didn't raise it in his post-conviction petition, we are limited to the claims that are in his petition. He didn't raise it in his petition. Therefore, it is not before, it shouldn't be before this court. That waiver doesn't apply to us, but that's besides the point. According to the Online Post-Conviction Hearing Act, you waive it unless it's in your post-conviction petition. Okay. We'll see about that. I didn't hear you. You waive it unless what? You dropped your voice. Okay. I'm sorry. I didn't want to interrupt him. No, I'm sorry. No, the Online Post-Conviction Hearing Act says that unless it's in a post-conviction petition, he has waived all of those claims. He can file a subsequent petition raising those claims and establishing cause and prejudice. And in People v. Cole, this division most recently found that if it's not in your petition, you waive it. It's not in there in this case. The sentencing hearing was not in his petition. Therefore, it's not before this court. It shouldn't be before this court. Okay. Thank you. Your Honor, this counsel is correct. The issue regarding Mr. Stevens' sentence was not included in the post-conviction petition. However, the Voidness Doctrine gives this court a vehicle whereby we can remedy this clear, blatant violation of the mandate, the statutes, and the Constitution. And we'd ask that this court would do so. Your Honor, I'd like to remind you, with regard to the fitness issue, that the standard here at the First... So your position is that she's saying that you waived it. You're saying, despite the fact that it wasn't in the post-conviction, that constitutionally you have a right to have this court here at any rate mandate statute, Constitution. I'm saying, based on ARNA and its progeny, that says that a sentence that does not conform to the statutory guidelines is void. This is exactly what we have here. This sentence was entered in contravention of the Illinois resentencing statute. And therefore, this court can find that it is void and address the issue, even though it was not included in the post-conviction petition. Voidness allows the claim to be raised at any time. Well, what if we find it's just voidable? Can we do it then? No, you cannot do it then, but we'd argue that this is void because... Have you ever read Sanders v. Shepard? I'm not familiar with that. You should be. Your Honor, we'd ask that this court would use the voidness doctrine to remedy this blatant violation of the statute. Your Honors, I'd like to also remind this court that the standard here for Mr. Stevens' PC is very low. His allegations must be taken as true at this stage. They are not rebutted by the record. His claim is arguable. It is not delusional. It is based on the record. It is based on the expert opinions of three medical professionals who concluded that Mr. Stevens' impairments were so substantial, Your Honors. This court mentioned Shanklin. Shanklin is very analogous. This case that we have here is distinguishable from the cases that the state compares it to, which are not first stage dismissals, Your Honor. In this case, the trial court did reject the expert's conclusion, but I would just like to remind the court that the trial court rejected the conclusion as to Miranda, not as to fitness. Your Honors, if this court has no further questions, we'd ask this court to reverse and amend this clause. Thank you, Counsel. This matter will be taken under advisement. This court is adjourned.